No. 91-264

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

IN THE MATTER OF D.S., H.S., R.S.,
R.S., J.S., R.S., and K.S.,
Youths in Need of Care.

APPEAL FROM: District Court of the Fifth Judicial District,
In and for the County of Beaverhead,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Thomas A. Dooling, Dooling Law Office, Dillon,
Montana.

For Respondent:

Hon. Marc Racicot, Attorney General, Helena,
Montana; Jennifer Anders, Assistant Attorney
General, Helena, Montana; Thomas R. Scott, County
Attorney, Dillon, Montana; Andrew P. Suenram,
Attorney at Law, Dillon, Montana.

Submitted on Briefs: February 6, 1992

Decided: June 25, 1992

Filed:

FILED
JUN 25 1992
Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The Montana Fifth Judicial District Court, Beaverhead County, terminated the parental rights of James K. Streckert and Ida E. Streckert (Streckerts), the natural parents of D.S., H.S., R.S., R.S., J.S., R.S., and K.S. Streckerts appeal. We affirm.

The issues raised on appeal are restated as follows:

1. Did the District Court deny the Streckerts due process by taking judicial notice of collateral proceedings and incorporating findings from the temporary custody proceeding into its order terminating the Streckerts' parental rights?

2. Did the State meet the statutory criteria for terminating Streckerts' parental rights under § 41-3-609, MCA?

In October 1989, the Department of Family Services (DFS) received complaints of educational neglect from school officials due to the Streckert children's excessive absences. In November 1989, the DFS received reports of possible sexual abuse, and petitioned the court for temporary investigative authority. The Streckerts were unrepresented at this hearing in December 1989, wherein the District Court appointed guardians ad litem for the children and granted the DFS temporary investigative authority. On March 22, 1990, the court heard the State's petition for temporary custody of the Streckert children, and granted DFS temporary custody. The court ordered D.S. removed to foster care with the other children remaining in the Streckert home. The Streckerts were not represented at this hearing. In April 1990, the court approved the treatment plan proposed by the DFS. The Streckerts

2

refused to sign the plan.  Further, evidence from the final hearing reveals that the Streckerts failed to comply with the plan.

After working with the Streckerts for over ten months, the state of Montana, through the DFS had petitioned the court to terminate the parental rights of appellants James and Ida Streckert on February 13, 1991.  The court conducted a hearing on this petition March 15, 20 and 21, 1991.  Court appointed counsel represented the Streckerts during the termination hearing.

The facts set forth in this opinion are summaries of the testimony presented in the course of the final termination hearing, wherein the Streckerts were represented by counsel.  Dr. Richard Thomas, a licensed professional counselor testified that the oldest boy, D.S., was sexually abusing his younger siblings, and that the Streckerts were aware of this abuse yet did not accept the seriousness of D.S.'s sexual activities.  Marjorie Montrose, the primary social worker, presented testimony that the Streckerts did not appreciate the impact this sexual abuse had on the younger children and failed to intervene.  Further, both Thomas and Montrose testified that the Streckerts did not effectively participate in the treatment of D.S. or the other children.  They missed scheduled meetings and when present they did not constructively use the counseling sessions.  Streckerts used these sessions to air grievances with the DFS rather than address their problems.

Deputy Sheriff William Briggs testified D.S. was stealing bicycles, and then dismantling, reassembling and repainting the

bikes in the shop behind the Streckert house. The Streckerts refused to acknowledge or address the thievery by D.S. In addition, Deputy Briggs caught R.S., shoplifting. He testified that Mr. Streckert "giggled" when he learned of the thievery of R.S, one of his younger children.

Neighbors, law enforcement, and social workers all testified that the Streckerts' house was filthy. Women from the local church attempted to work with Mrs. Streckert to improve her housekeeping skills, and a neighbor testified that she laundered the Streckerts' clothes for a month. Despite this encouragement, Mrs. Streckert made no attempt to keep the house habitable. Mrs. Streckert worked neither out of the home nor in the home; rather, she spent her days watching television. Mr. Streckert's former employer testified that Mr. Streckert was a "first rate'' mechanic. Nonetheless, Mr. Streckert chose not to work and depended on the church to pay his rent.

Montrose testified that although the Streckerts made no improvement in their home as required by the plan, in her opinion the habitability of the home was not as important as the negative emotional and psychological influence that the Streckerts had on their children.

Uncontradicted testimony demonstrated the inability of the Streckerts to learn parenting skills. R.S.'s teacher testified that she kept food at school to feed R.S. The Streckerts' neighbor testified that she fed the Streckert children daily. The children's clothes as well as the children themselves were filthy.

4

The foster parents of the five younger children testified that when they were placed into foster care, the children were unaccustomed to bathing, that they had an eighth of an inch of "greasy, scaly, cruddy stuff on their hair" which took over a week of bathing to wash out. The younger boys were hungry when they arrived. The children were unaccustomed to eating with utensils and did not know how to brush their teeth. In addition, the physician examining the children after they were placed with foster parents testified that R.S. needed dental care, suffered from a severe ear infection which blocked his hearing, and had untreated speech problems. A neighbor testified that the Streckerts treated their children with animal medication.

Social workers Montrose and Riley testified that despite the DFS's efforts, Streckerts refused to comply with the treatment plan. This testimony was confirmed by Dr. Thomas who testified that in his opinion the treatment plan was appropriate, and that the Streckerts failed to comply. Thomas testified that the Streckerts' behavior was both inappropriate and manipulative. Further, he concluded that any continued treatment would be detrimental to the children. Finally, he testified that it was in the best interest of the children to permanently separate them from their parents.

Social workers Montrose and Riley testified that even if the Streckerts engaged in long term treatment, it was unlikely that they would successfully complete the treatment plan. They further testified that any further delay in permanent placement would be

detrimental to the children. Accordingly, they recommended immediate termination of parental rights. The Streckerts denied all evidence presented by the State: however, the court specifically found their continued denial was not credible.

On April 1, 1991, the District Court terminated the Streckerts' parental rights. In its findings, the District Court took judicial notice of the two collateral proceedings and incorporated the findings from the temporary custody proceeding into its termination order. The Streckerts appeal from this order terminating their parental rights.

I

Did the District Court deny the Streckerts due process by taking judicial notice of collateral proceedings and incorporating findings from the temporary custody proceeding into its order terminating the Streckerts' parental rights?

This Court has previously determined that due process requirements are satisfied when the State appoints counsel prior to termination hearings. Matter of M.F. J.F. & R.W. (1982), 201 Mont. 277, 286, 653 P.2d 1205, 1209-1210. Likewise, we have held that due process does not require appointment of counsel for parents during temporary custody hearings. Matter of T.C. & R.C. (1989), 240 Mont. 308, 314-315, 784 P.2d 392, 395-396. Thus, the State was not required to provide Streckerts with counsel at the proceeding granting the DFS temporary investigative authority or the hearing granting the DFS temporary custody of the Streckert children.

In its final order the District Court took judicial notice of

these prior proceedings and incorporated findings from the temporary custody hearing into its order terminating parental custody. A district court should not take judicial notice of a hearing at which parties were not represented by counsel. Normally the taking of such judicial notice would violate the due process rights of the parties. Matter of M.F., J.F. & R.F., 201 Mont. at 286, 653 P.2d at 1209-1210.

While the District Court was incorrect in taking judicial notice of prior proceedings and incorporating those findings into its final order, we conclude that the due process rights of the Streckerts were not violated. It was unnecessary for the District Court to make any reference to the temporary custody proceedings. All of the extensive findings of the District Court in connection with its final order terminating parental rights are supported by evidence submitted in the course of the final hearing. There was no necessity to refer back to collateral proceedings at which the Streckerts were not represented. We emphasize that the District Court should not have made any attempt to incorporate the temporary custody hearing matters, at which the Streckerts were unrepresented, into the proceedings which resulted in the termination of parental rights. However, where the evidence presented, without objection, substantiates all of the findings and conclusions of the District Court in its order terminating parental rights, we conclude there has been no denial of due process as to the Streckerts.

We hold that due process was not denied to the Streckerts by

the District Court's reference to the collateral proceedings and incorporation of findings from the same.

## II

Did the State meet the statutory criteria for terminating Streckerts' parental rights under § 41-3-609, MCA?

Section 41-3-609, MCA states in part:

(1) The court may order a termination of the parent-child legal relationship upon a finding that any of the following circumstances exist . . .
　　(c) the child is an adjudicated youth in need of care and both of the following exist:
　　(i) an appropriate treatment plan that has been approved by the court has not been complied with by the parents or has not been successful; and
　　(ii) the conduct or condition of the parents rendering them unfit is unlikely to change within a reasonable time. . . .

The District Court determined that the State proved the termination criteria under § 41-3-609, MCA, by clear and convincing evidence. We will not set aside the trial court's findings unless they are clearly erroneous. Rule 52(a), M.R.Civ.P.

First, the Streckerts assert that the court used vague criteria within the Montana statute to terminate custody. Next, they contend that the court based its decision on an intolerance of Streckerts' religious beliefs and the Streckerts' inability to provide their children with middle class luxuries. Finally, they claim the court had insufficient evidence from which to determine the Streckerts were "unfit" parents.

These allegations are not supported in any manner by the record in this case. On the contrary, the court's finding that the Streckerts are unfit parents is supported by the testimony of all

8

witnesses at the final hearing save the testimony of James and Ida Streckert themselves. Here, the record shows that D.S., H.S., R.S., R.S., J.S., R.S., and K.S. were adjudicated youths in need of care, that the Streckerts had not complied with the court approved treatment plan, and that the Streckerts' conduct causing the problem could not be rectified within a reasonable time.

We hold that the State met the statutory criteria necessary to terminate Streckerts' parental rights under § 41-3-609, MCA.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9

Justice William E. Hunt, Sr., dissenting.

I dissent. Today the decision by the Court effectively sanctions a violation of an individual's due process rights by the State. It is flatly wrong for the District Court to incorporate judicial notice of temporary custody hearings, where counsel is not present or mandatory, into its final order terminating parental custody rights. To do *so*, and prevent the parents from having the right to counsel, is to create the grave risk of an erroneous decision. In reaching its conclusion, the majority sadly forsakes a fair adjudication of the rights of all the persons, both parents and children. A parental termination case merits the utmost protection of the parents' rights to be adequately represented. The court should not use the evidence against the parents to judge the legitimacy of their interest based on hearing without counsel. In attempting to justify what appears to be a proper and just conclusion, the majority is led into unconstitutional methods to reach its ends.

The majority contends the violation of due process is negligible in its effect because the evidence supports its conclusion, and is thus permissible. The violation of the Streckerts' right to counsel should not be swept under the analysis of the evidence, nor should it be dismissed as negligible. Substantiality of evidence has never been an adequate reason to sustain a violation of an individual's right to counsel. The majority writes, "[n]ormally the taking of such judicial notice

10

would violate the due process rights of the parties."  The use of the word "normally" makes the right to due process appear arbitrary and contingent on social norms proscribed only by the majority today.  This has never been the case.  The review of a due process violation should be an unequivocal constant which is not subject to erratic determination based on norms.  At times, the court has committed itself to a balance test, concluding, for example, that a violation may be outweighed by compelling state interests.  The Court's discretion to forego that analysis today goes beyond permissible limits.  Even in the shadow of evidence supporting the majority's conclusion, a violation of the due process rights of an individual should never be sanctioned.

I would remand this case to the District Court for findings of fact, conclusions of law, and order based on procedures that afford the parents due process so that there is no sanction of a violation of an individual's due process rights by the State.

_William E. Hunt_
Justice

Justices Karla M. Gray and Terry N. Trieweiler concur in the foregoing dissent of Justice Hunt.

_Terry Trieweiler_
_Karla M. Gray_
Justice

11

June 25, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Thomas A. Dooling
DOOLING LAW OFFICE, P.C.
P.O. Box 1339
Dillon, MT  59725

HON. MARC RACICOT, Attorney General
Jennifer Anders, Assistant
Justice Bldg.
Helena, MT  59620

Marge Montrose
Montana Department of Family Services
Courthouse
Dillon, MT  59725

Thomas R. Scott
Beaverhead County Attorney
Courthouse
Dillon. MT  59725

Andrew Suenam
Attorney at Law
310 E. Sebree
Dillon, MT  59725

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy